UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated, | ) )  Case No.  3:19-cv-1196 ) |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| HFF, INC., MARK D. GIBSON, DEBORAH H. MCANENY, SUSAN P. MCGALLA, GEORGE L. MILES, JR., MORGAN K. O'BRIEN, LENORE M. SULLIVAN, JOE B. THORNTON JR., and STEVEN E. WHEELER, | ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of HFF, Inc. ("HFF" or the "Company") against HFF and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which HFF will be acquired by Jones Lang LaSalle Incorporated ("JLL"), through its wholly owned subsidiaries JLL CMG, LLC ("Merger LLC") and JLL CM, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On March 19, 2019, HFF and JLL issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, each share of HFF Class A common stock will be converted into the right to receive $24.63 in cash and 0.1505 of a share of JLL common stock per HFF share (the "Merger Consideration").  Upon completion of the Proposed Transaction, JLL and HFF stockholders will own approximately 88% and 12%, respectively, of the outstanding shares of the combined company.  Based on the closing price of JLL common stock of $163.02 per share on March 18, 2019, the implied value of the Merger Consideration is $49.16 per share.  The Proposed Transaction has an equity value of approximately $2 billion.

3.      On January 4, 2019, HFF and JLL filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that HFF stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) HFF's and JLL's financial projections, including the financial projections relied upon by HFF's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) Morgan Stanley's potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as HFF stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, HFF's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin

the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  HFF is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HFF common stock.

9.  HFF is a Delaware corporation and maintains its principal executive offices at One Victory Park, 2323 Victory Avenue, Suite 1200, Dallas, Texas 75219.  HFF is a leading provider of commercial real estate and capital markets services to both consumers and providers of capital in the commercial real estate industry.  HFF's common stock is traded on the New York

Stock Exchange under the ticker symbol "HF."

10. Defendant Mark D. Gibson ("Gibson") has been Chief Executive Officer ("CEO") of the Company since April 2014 and became a director and Vice Chairman of the Company in November 2006.

11. Defendant Deborah H. McAneny ("McAneny") has been a director of the Company since January 2007.

12. Defendant Susan P. McGalla ("McGalla") has been a director of the Company since October 2009.

13. Defendant George L. Miles, Jr. ("Miles") has been a director of the Company since January 2007.

14. Defendant Morgan K. O'Brien ("O'Brien") has been a director of the Company since October 2012.

15. Defendant Lenore M. Sullivan ("Sullivan") has been a director of the Company since January 2007.

16. Defendant Joe B. Thornton, Jr. ("Thornton") has been President of the Company since April 2014 and became a director and Vice Chairman of the Company in November 2006.

17. Defendant Steven E. Wheeler ("Wheeler") has been a director of the Company since March 2010.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. JLL is a Maryland corporation and maintains its principal executive offices at 200 East Randolph Drive, Chicago, Illinois 60601. JLL is a professional service firm that specializes

in real estate and investment management. JLL's common stock trades on the New York Stock Exchange under the ticker symbol "JLL."

20. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of JLL.

21. Merger LLC is a Delaware limited liability company and a wholly-owned subsidiary of JLL.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own HFF common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of April 18, 2019, there were 39,823,827 shares of HFF Class A common stock outstanding. All members of the Class may be identified from records maintained by HFF or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

28. HFF provides commercial real estate and capital markets services to consumers and providers of capital in the commercial real estate industry. It is also one of the largest full-service commercial real estate financial intermediaries in the country. During 2018, HFF advised on approximately $99.7 billion of completed commercial real estate transactions, a 3.8% increase compared to 2017.

29. The Company performs a variety of capital markets services including debt placement, investment advisory, distressed debt and real estate owned advisory services, equity placement, investment banking and advisory services, loan sales, and commercial loan servicing.

Substantially all of HFF's revenues are in the form of capital markets services fees collected from its clients and commercial loan servicing activities.

30.   HFF has reported solid financial results in recent quarters. For example, on October 30, 2018, the Company reported its third quarter 2018 financial and transaction production results, including revenue of $161.4 million, a 9.0% increase compared to the third quarter of 2017, net income of $29.6 million, compared to $21.6 million in the third quarter of 2017, and net income per diluted share of $0.73, a 35.2% increase compared to the third quarter of 2017. Commenting on the quarter's strong financial results, defendant Gibson stated:

> We are pleased with the Company's third quarter 2018 results which were driven by increased volumes in all of our business platforms. We remain confident in the industry's fundamental drivers and HFF's market position, as we look beyond our third quarter results. We believe the combination of our unique partnership culture, the synergies and diversification afforded by our capital markets centric business model, our strong balance sheet, and the strategic investments we continue to make enable us to add value and provide best in class services to our clients while positioning the Company for future growth.

31.   On February 1, 2019, HFF declared a special cash dividend of $1.75 per common share – the seventh special cash dividend the Company has declared since December 2012.

32.   On February 21, 2019, HFF reported its fourth quarter and full year 2018 financial and transaction production results. For the quarter, the Company's financial results included revenue of $215.3 million, a 16.2% increase compared to the fourth quarter of 2017, and net income of $45.0 million, a 31.3% increase compared to $34.2 million in the fourth quarter of 2017. Similarly, for full year 2018, revenue was reported at $662.0 million, an 8.6% increase compared to full year 2017, and net income was $116.0 million, a 22.1% increase compared to $95.0 million for full year 2017. Defendant Gibson commented on the Company's financial results, stating:

> We are pleased with the Company's fourth quarter 2018 results which were driven by increased volumes in our debt and investment advisory business platforms. We remain confident in the industry's fundamental drivers and HFF's market position,

as we look beyond our fourth quarter results. We believe the combination of our unique partnership culture, the synergies and diversification afforded by our capital markets centric business model, our strong balance sheet, and the strategic investments we continue to make enable us to add value and provide best in class services to our clients while positioning the Company for future growth.

**The Proposed Transaction**

33.     On March 19, 2019, HFF and JLL issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> CHICAGO and DALLAS, March 19, 2019 /PRNewswire/ -- Jones Lang LaSalle Incorporated (NYSE: JLL) and HFF, Inc. (NYSE: HF) today announced that they have entered into a definitive agreement under which JLL will acquire all the outstanding shares of HFF in a cash and stock transaction with an equity value of approximately $2 billion. The transaction has been unanimously approved by the boards of directors of both companies.
>
> HFF is one of the largest and most successful commercial real estate capital markets intermediaries in the U.S., marked by decades-long relationships with clients, a talented leadership team and best-in-class capital markets advisors. Since 1998, HFF has closed more than $800 billion in over 27,000 transactions, achieving record revenue in 2018 of more than $650 million. Mark Gibson, CEO of HFF, will join JLL as CEO, Capital Markets, Americas and Co-Chair of its Global Capital Markets Board.
>
> "Increasing the scale of our Capital Markets business is one of the key priorities in our Beyond strategic vision to drive long-term sustainable and profitable growth. The combination with HFF provides a unique opportunity to accelerate growth and establish JLL as a leading capital markets intermediary, with outstanding capabilities," said Christian Ulbrich, Global CEO of JLL. "We have long admired HFF for its expertise and leading reputation in the industry, as well as its client-first culture of teamwork, ethics and excellence, which aligns with our own. I believe that combining our organizations will deliver a range of compelling benefits for our clients, employees and shareholders."
>
> * * *
>
> **Transaction Details**
>
> Under the terms of the agreement, HFF shareholders will receive $24.63 in cash and 0.1505 JLL shares for each HFF share. Based on the closing price of JLL stock of $163.02 on March 18, 2019, the cash and stock consideration to be received by HFF shareholders at closing is valued at $49.16 per HFF share. The share price represents a premium of approximately 22 percent and 25 percent compared to the

volume weighted average price of HFF over 60 and 90 trading days, respectively, and a premium of approximately 6 percent over the closing stock price on March 18, 2019 (before the positive impact of the $1.75 per share special dividend declared on January 31, 2019 and paid on February 27, 2019). Upon closing of the transaction, JLL shareholders are expected to own approximately 87 percent of the combined company, and HFF shareholders are expected to own approximately 13 percent. All seven Executive Committee members of HFF have agreed to vote their shares, representing 3 percent ownership of HFF, in favor of the transaction. Key HFF senior leaders and capital markets advisors have entered into 3-4 year commitments related to employment, non-competition and/or retention. Finally, JLL anticipates adding one of HFF's existing directors to JLL's Board of Directors effective as of the closing of the transaction.

JLL intends to fund the cash portion of the purchase price consideration with a combination of cash reserves and its existing syndicated credit facility. The combination is expected to deliver significant run-rate synergies, estimated at approximately $60 million over two to three years.

The transaction is expected to close in the third quarter of 2019, subject to HFF shareholder approval and customary closing conditions, including regulatory review. The transaction is not contingent upon receipt of financing.

**Insiders' Interests in the Proposed Transaction**

34. HFF insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and HFF's public stockholders.

35. Notably, certain Company insiders have secured positions for themselves with the combined company upon closing of the merger. For example, JLL has entered into employment agreements with 52 HFF employees, including defendants Gibson and Thornton, and five other HFF executive officers. The employment agreements provide each employee with retention bonuses in the aggregate amount of $21,625,000 in cash bonuses and $90,000,000 in value of JLL retention restricted stock units. Defendant Gibson will also become CEO-Capital Markets, Americas of JLL and Co-Chair of JLL's Global Capital Markets Board.

36. Further, if they are terminated in connection with the Proposed Transaction, HFF's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**HFF, Inc.**
**"Golden Parachute" Compensation Disclosure**

| Name | Cash | Equity(2) | Perquisites/ Benefits | Total |
|---|---|---|---|---|
| Mark D. Gibson<br>Chief Executive Officer | $ — | $ — | $ — | $ — |
| Gregory R. Conley<br>Chief Financial Officer | $4,537,291(1) | $ — | $ 52,873(3) | $4,590,164 |
| Joe B. Thornton, Jr.<br>President | $ — | $ — | $ — | $ — |
| Matthew D. Lawton<br>Executive Managing Director | $ — | $5,000,000 | $ — | $5,000,000(4) |
| Michael J. Tepedino<br>Executive Managing Director | $ — | $5,000,000 | $ — | $5,000,000(4) |
| Kevin C. MacKenzie<br>Executive Managing Director. | $ — | $5,000,000 | $ — | $5,000,000(4) |

**The Registration Statement Contains Material Misstatements and Omissions**

37. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to HFF's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

38. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) HFF's and JLL's financial projections, including the financial projections relied upon by HFF's financial advisor, Morgan Stanley; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) Morgan Stanley's potential conflicts of interest. Accordingly, HFF stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning HFF's and JLL's Financial Projections*

39. The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's and JLL's respective intrinsic value and prospects going forward.

40. The Registration Statement sets forth that in connection with rendering its fairness opinion, Morgan Stanley: (i) "reviewed certain financial projections prepared by the management of HFF;" and (ii) "reviewed and discussed with the management of HFF and JLL certain publicly available Wall Street research containing financial projections relating to JLL that are generally reflective of CapIQ consensus estimates as of March 13, 2019." Registration Statement at 67. Yet, with the exception of certain HFF projections for 2019, the Registration Statement fails to disclose the financial projections for HFF and JLL utilized by Morgan Stanley in the valuation analyses underlying its fairness opinion.

41. With respect to the post-merger combined company, the Registration Statement similarly states that Morgan Stanley (i) "reviewed information relating to certain strategic, financial and operational benefits anticipated from the Mergers, prepared by the managements of HFF and JLL, respectively;" and (ii) "reviewed the pro forma impact of the Mergers on JLL's earnings per share, cash flow, consolidated capitalization and certain financial ratios." *Id.* The Registration Statement fails to disclose, however, any projected strategic, financial or operational benefits, as well as any additional synergies, anticipated from the Proposed Transaction, or any information regarding the pro forma impact of the Proposed Transaction on JLL's earnings per share, cash flow, consolidated capitalization and certain financial ratios.

42. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of HFF's Financial Advisor" sections of the

Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's Financial Analyses*

43. The Registration Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, HFF's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to HFF's stockholders.

44. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of HFF, the Registration Statement fails to disclose: (i) HFF's unlevered free cash flow for fiscal years 2019 through 2023 and all underlying line items; (ii) HFF's forecasted adjusted EBIDTA for the twelve months ending December 31, 2024; (iii) the estimated terminal values for HFF; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 9.5% that Morgan Stanley applied in the analysis; and (v) quantification of HFF's cash, outstanding debt, non-controlling interest and the present value of future payments under the Tax Receivable Agreement, each as of June 30, 2019, utilized by Morgan Stanley in the analysis.

45. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of JLL, the Registration Statement fails to disclose: (i) JLL's unlevered free cash flow for fiscal years 2019 through 2023 and all underlying line items; (ii) JLL's forecasted adjusted EBIDTA for the twelve months ending December 31, 2024; (iii) the estimated terminal values for JLL; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 6.7% to 8.4% that

Morgan Stanley applied in the analysis; and (v) quantification of JLL's cash, outstanding debt, and non-controlling interest, each as of June 30, 2019, utilized by Morgan Stanley in the analysis.

46. With respect to Morgan Stanley's *Precedent Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Morgan Stanley.

47. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

48. The omission of this information renders the statements in the "Opinion of HFF's Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

49. The Registration Statement omits material information concerning the potential conflicts of interest faced by Morgan Stanley.

50. The Registration Statement sets forth:

> Under the terms of its engagement letter, Morgan Stanley provided the HFF Board with financial advisory services and a financial opinion, and HFF has agreed to pay Morgan Stanley a base fee of approximately $19.4 million or approximately $23.5 million in total fees including full payment of an incentive fee based on terms of the engagement letter executed between Morgan Stanley and HFF. HFF has also agreed to reimburse Morgan Stanley for its reasonable and documented expenses, including the reasonable fees of outside counsel and other professional advisors, incurred in performing its services. In addition, HFF has agreed to indemnify

> Morgan Stanley and its affiliates, their respective directors, officers, agents and employees and each person, if any, controlling Morgan Stanley or any of its affiliates against certain liabilities and expenses, including certain liabilities under the U.S. federal securities laws, relating to or arising out of Morgan Stanley's engagement.

Registration Statement at 77. Yet, the Registration Statement fails to disclose whether Morgan Stanley will receive the incentive fee, the circumstances under which the incentive fee may become payable to Morgan Stanley, and the amount of Morgan Stanley's total fee that is contingent upon consummation of the Proposed Transaction.

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52. The omission of this information renders the statements in the "Opinion of HFF's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

53. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. During the relevant period, defendants disseminated the false and misleading

Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

56. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and JLL's financial projections, relied upon by Morgan Stanley in its analyses, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and Morgan Stanley's potential conflicts of interest. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

57. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of HFF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HFF and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

64. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, HFF's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of HFF, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to HFF stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 17, 2019

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
Texas Bar No. 00794935
**FEDERMAN & SHERWOOD**
2926 Maple Ave., Suite 200
Dallas, TX 75201
Telephone:    (214) 696-1100
Facsimile:    (214) 740-0112
Email:  wbf@federmanlaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1. I have reviewed the complaint in this matter against HFF, Inc. ("HFF") and others and authorized the filing thereof.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. My transactions in HFF securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5. I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):


6. I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

*stephen bushansky*
stephen bushansky (May 16, 2019)
Stephen Bushansky

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price per Share |
|---|---|---|---|
| Purchase | 1/30/2007 | 50 shares | $16.70 |
| | | | |
| | | | |